J. S41026/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PAUL DEPAOLI | : | |
| Appellant | : | |
| | : | No. 1720 EDA 2015 |

Appeal from the Judgment of Sentence February 19, 2015
In the Court of Common Pleas of Monroe County
Criminal Division No(s): CP-45-CR-0001772-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PAUL DEPAOLI | : | |
| Appellant | : | |
| | : | No. 1721 EDA 2015 |

Appeal from the Judgment of Sentence February 19, 2015
In the Court of Common Pleas of Monroe County
Criminal Division No(s): CP-45-CR-0001773-2013

BEFORE: BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E. [*]

JUDGMENT ORDER BY DUBOW, J.:        **FILED DECEMBER 14, 2016**

In this consolidated appeal, Appellant, Paul DePaoli, appeals from two

Judgments of Sentence entered on February 19, 2015, in the Court of

Common Pleas of Monroe County following his convictions of Rape of a Child[1]

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3121(c).

and related offenses. After careful review, we remand and order the trial court to file an amended Pa.R.A.P. 1925(a) Opinion within sixty (60) days.

On October 23, 2015, after a consolidated trial, a jury found Appellant guilty of numerous sexually based offenses regarding two minor victims. On February 19, 2015, after a hearing, the trial court found Appellant to be a Sexually Violent Predator ("SVP") and sentenced Appellant to an aggregate term of 23¼ to 48 years' incarceration.[2]

After the denial of his Post-Sentence Motion, Appellant filed a timely Notice of Appeal on June 12, 2015. On July 6, 2015, Appellant filed a timely Rule 1925(b) Statement, which raised eleven distinct issues spanning two pages.

On September 4, 2015, the trial court filed a Rule 1925(a) Opinion that only addressed the seven issues listed on the first page of Appellant's Rule 1925(b) Statement. The trial court failed to address any of the issues listed on the second page of the Rule 1925(b) Statement, including:

> h. Failing to instruct the jury in regards to the *mens rea* and *actus reus* issues relating to the voluntariness of the contract between Defendant and RD in the shower;
>
> i. Finding [Appellant] to be a SVP;

---

[2] The trial court sentenced Appellant to an aggregate term of 11½ to 24 years' incarceration for the docket concerning victim M.K. and an aggregate term of 11¾ to 24 years' incarceration for the docket concerning victim R.D. The trial court ordered the sentences to be served consecutively.

j. Sentencing [Appellant] in excess of the "mandatory minimum", though the [trial court] correctly found that such "mandatories" are Constitutionally infirm;

k. Finding that the jury's verdict was against the weight of the evidence[.]

Appellant's Pa.R.A.P. 1925(b) Statement at 2.

Without a complete Rule 1925(a) Opinion, this Court is unable to conduct meaningful appellate review and remand is the appropriate remedy. *See Commonwealth v. DeJesus*, 868 A.2d 379, 383 (Pa. 2005) (case remanded to the trial court for the issuance of an adequate opinion); *see also* Pa.R.A.P. 1925. "[I]n any case where the trial court fails to prepare an opinion that addresses the issues upon which it passed and which are raised by a party on appeal, the net result is the same: the appellate court is deprived of explication and guidance on those issues from the judicial entity most familiar with the matter." *DeJesus*, 868 A.2d at 383.

Based on the foregoing, we remand this matter to the trial court for issuance of an amended Opinion in accordance with Pa.R.A.P. 1925(a). The amended Rule 1925(a) Opinion shall address the four issues of trial court error that Appellant raised in his Rule 1925(b) Statement and addressed in his brief, specifically issues "h." through "k." *See* Appellant's Pa.R.A.P. 1925(b) Statement at 2. The trial court is to file the amended Rule 1925(a) Opinion within sixty (60) days of the date of this Judgment Order.

Case remanded with instructions. Jurisdiction retained.

J.S41026/16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/2016

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA   :
    :   NO. 1772 CR 2013
    :   NO. 1773 CR 2013
    v.     :
    :   APPEAL DOCKET NO.
PAUL DEPAOLI,     :   1720 EDA 2015
    :   1721 EDA 2015
    Defendant     :
    :

## OPINION PURSUANT TO Pa.R.A.P. 1925(a)

Following the denial of his post-sentence motions, Defendant Paul DePaoli ("Defendant") filed an appeal from the judgments of sentence entered on May 29, 2015. After the appeal was filed, we directed Defendant to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Defendant complied. We now file this opinion in accordance with Pa.R.A.P. 1925(a).[1]

## Background

Prior to June, 2012, Defendant and his family were close friends with Jeanette Rayola for fifteen years. During that time, M.K., Ms. Rayola's daughter, would often spend time at Defendant's house playing with Defendant's daughter, R.D. On June 12, 2012, while in the bathtub, M.K made a statement to her mother that Defendant had placed a chocolate stick in her mouth and moved it back and forth. The following day, M.K. stated to her mother that Defendant placed his thumb in her mouth as well as a chocolate stick. A few days later M.K. told her mother that Defendant and M.K. would

---

[1] Although the Defendant's cases are docketed separately, we are filing a single, consolidated opinion because the relevant facts and history are the same and the challenged judgments resulted from a single, consolidated trial.

1

play an activity where Defendant would take M.K. into his bedroom, put a blindfold on her, and put his hairy thumb and chocolate twizzlers in her mouth. M.K.'s mother became concerned and reached out to the director of the Tobyhanna Army Depot Child Care Center. Following a discussion with the director, M.K.'s mother contacted the Child Advocacy Center. After overhearing a discussion between her mother and Patrick Lawrence from the Child Advocacy Center, M.K. told her mother that Defendant shot water in her mouth and made her swallow. After speaking with Lawrence, M.K.'s mother called Child Line to report the suspected child abuse. The Barrett Township Police Department then opened an investigation into the matter.

M.K.'s mother entered M.K. in counseling with Samantha Burkhardt, a therapist, whose practice focuses primarily on the treatment of victims and perpetrators of sexual abuse. During counseling sessions with Burkhardt, M.K. told the same story involving the blindfold, candy, Defendant's hairy thumb, and Defendant's squirting water in her mouth. M.K. described the water as salty, gross, and yucky. Over the course of their counseling sessions Burkhardt educated M.K. on male and female anatomy. Following this education M.K recounted the above story to Burkhardt, but used the word penis instead of hairy thumb.

Defendant was arrested in July of 2013 and charged, in relation to M.K., with rape of a child, involuntary deviate sexual intercourse with a child, aggravated indecent assault of a child, indecent assault of a child, endangering the welfare of a child, corruption of a minor, and unlawful contact with a minor. These charges were filed at docket No. 1772 CR 2013.

2

In June of 2013, R.D., Defendant's daughter, related a story to Bobbe Frankel regarding inappropriate physical contact with the Defendant. Following the disclosures, Frankel contacted the relevant Pennsylvania authorities and an investigation was started regarding these allegations. Defendant was arrested in July of 2013 and charged, in relation to R.D., with rape of a child, involuntary deviate sexual intercourse with a child, incest, indecent exposure, indecent assault of a child, unlawful contact with a minor, corruption of a minor, and endangering the welfare of a child. These charges were filed to docket No. 1773 CR 2013.

In July of 2014, Melissa DePaoli, Defendant's wife and R.D.'s mother, took R.D. to see a therapist to determine whether an inappropriate physical contact with the Defendant had taken place.

On August 13, 2013, the Commonwealth gave notice that the two cases would be joined pursuant to Pa.R.Crim.P. 582(b)(1). Defendant did not object to joinder.

On October 11, 2013 the Commonwealth filed a motion seeking to allow M.K. to testify by a contemporaneous alternative method pursuant to 42 Pa.C.S.A § 5985, and a separate motion requesting an *in camera* hearing to determine the admissibility of statements made by M.K. to others under the Tender Years Hearsay Act ("TYHA"), 42 Pa.C.S.A. § 5985.1. An *in camera* hearing was conducted on March 28, 2014. Following the hearing, the parties filed briefs addressing M.K.'s competency and the admissibility of statements under the TYHA.

On July 28, 2014, we issued an order finding that testifying in open court or in front of Defendant would cause M.K. severe emotional distress. Accordingly, we permitted M.K. to testify via contemporaneous alternative method. In addition, we found

3

that that statements made by M.K. to her mother and counselor were admissible under the TYHA. Finally, we indicated that competency of witnesses would be determined at trial.

Prior to M.K.'s trial testimony, a competency examination was conducted. M.K. was able to spell her name, and tell the Court her age, birthday, year of birth, and where she went to school. M.K. appropriately answered questions regarding truth and lies, and demonstrated that she knew lying was bad and that if she lied in court she would get in big trouble. M.K. further demonstrated that she knew what a promise was, and she promised not to lie in court. We found her to be a competent witness.

During her testimony at trial, M.K. testified that Defendant did bad things to her and that Defendant blindfolded her and gave her candy. She also testified that Defendant put his hairy thumb in her mouth and that she told her mother and counselor about this event. Upon cross examination, M.K. answered defense counsel's questions. She never refused to answer or became unresponsive and defense counsel willingly ceased his cross-examination.

On the second day of trial the Commonwealth called Rebecca Guerrini as a rebuttal witness. Defense counsel objected, because Guerrini had been in the courtroom the previous day and for the morning session and other witnesses had been sequestered. Guerrini was not called during the Commonwealth's case in chief as she was only a potential rebuttal witness. After the testimony of Donna Caponigro and Joanne Laughton-Abate, the Commonwealth became aware that Guerrini's testimony would be needed and had her leave the room until she was called.

4

On October 23, 2015, the jury found Defendant guilty of numerous sex crimes and other offenses. In the case involving M.K., Defendant was convicted of involuntary deviate sexual intercourse with a child, endangering the welfare of a child, unlawful contact with a minor, corruption of a minor, and indecent assault of a child. In the case involving R.D., Defendant was found guilty of rape of a child, involuntary deviate sexual intercourse with a child, incest, endangering the welfare of a child, unlawful contact with a minor, indecent exposure, corruption of a minor, and indecent assault of a child. In each case, an order was issued scheduling a sentencing hearing and directing that Defendant undergo an evaluation by the Pennsylvania Sexual Offender Assessment Board.

On February 19, 2015, after a hearing, we found Defendant to be a Sexually Violent Predator. Defendant was then sentenced to an aggregate period of incarceration of not less than 11 years and 9 months and not more than 24 years and ordered to register under Megan's Law IV, 42 Pa.C.S.A. § 9799.10 et. seq.

Subsequently, Defendant filed post-sentence motions. The motions were denied on May 29, 2015. Defendant then filed this appeal.

## Discussion

### 1. Competency as a Witness

Defendant's second assignment of error contends that we erred by finding M.K. to be a competent witness. This contention is meritless.

The general rule is that every person is competent to be a witness except as otherwise provided by statute or in the Pennsylvania Rules of Evidence. Pa.R.E. 601(a). A person is deemed incompetent if, due to a mental defect or immaturity, the

5

court finds the person: "(1) is, or was, at any relevant time, incapable of perceiving accurately; (2) is unable to express himself or herself so as to be understood either directly or through an interpreter; (3) has an impaired memory; or (4) does not sufficiently understand the duty to tell the truth." Pa.R.E. 601(b). Pennsylvania requires an examination of child witnesses for competency. *Commonwealth v. Delbridge*, 855 A.2d 27, 37 (Pa. 2003). The test for child competency involves an examination of whether a child has:

> (1) capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering what it is that she is called to testify about and (3) a consciousness of the duty to speak the truth.

*Id.* (quoting *Rosche v. McCoy*, 156 A.2d 307, 310 (Pa. 1959)). The trial court retains discretion to determine whether a child witness is competent to testify. *Commonwealth v. Hunzer*, 868 A.2d 498, 507 (Pa. Super. 2005).

M.K. participated in two *in camera* proceedings in which her competency was examined. On March 28, 2014, during the pre-trial TYHA hearing, M.K. was able to tell us her age and what grade she was in and was able to count to ten. (N.T., 3/28/2014, p. 13). She demonstrated that she knew the difference between the truth and a lie, and further stated that telling lies could get her in trouble. (*Id.* at 14). M.K. also said she would not tell a lie and that lying is bad. (*Id.* at 19). She further stated that the Defendant did something to her that she does not like to talk about but that she would talk about it again in the court if she had to. (*Id.* at 21, 25-26). This clearly demonstrated that M.K. had the ability to communicate, the capacity to observe and remember the occurrence she was to testify about, and the requisite awareness of the duty to speak the truth.

6

The second *in camera* proceeding took place on October 22, 2014, immediately prior to M.K.'s trial testimony. During that examination, M.K. knew and could spell her last name, knew how old she was, knew her birthdate and year, and knew what school she was attending. (N.T., 10/22/2014, p. 8). This demonstrated both that M.K. had the capacity to communicate through understanding questions and giving intelligent answers. She also demonstrated she knew the difference between the truth and a lie, said that telling lies was bad, and promised she would tell the truth. (*Id.* at 10). M.K. said that she knew she could get in big trouble for lying in court. (*Id.* at 16). This demonstrated that M.K. was conscious of her duty to speak the truth.

Because M.K. demonstrated her capacity to communicate through understanding questions and giving intelligent answers, demonstrated her ability to observe and remember the event she was called to testify about, and because she was conscious of her duty to speak the truth we found M.K. to be a competent witness. Her subsequent testimony at trial demonstrated that our determination was correct under the law. Defendant's challenge to our determination that M.K. was competent to testify is without merit.

## 2. Introduction of Tender Years Material

Defendant's first and third assignments of error contend that we erred by allowing the Commonwealth to admit statements made by M.K. to others under the TYHA. In these assignments of error Defendant appears to raise a general challenge to our evidentiary ruling. In addition, Defendant claims that M.K.'s statements should not have been allowed because, according to Defendant, M.K. was effectively unable to complete her testimony. Finally, Defendant argues that his state and federal confrontation rights

7

were violated by the introduction of M.K.'s Tender Years' hearsay statements. These assignments of error lack merit.

Generally, an out-of-court statement is inadmissible at trial unless it falls into one of the exceptions to the hearsay rule. "Exceptions have been fashioned to accommodate certain classes of hearsay that are substantially more trustworthy than hearsay in general, and thus merit exception to the hearsay rule." *Commonwealth v. Bean*, 677 A.2d 842, 844 (Pa. Super. 1996) (citations omitted); *See also Commonwealth v. Charlton*, 902 A.2d 554 (Pa. Super. 2006).

The tender years exception to the rule against hearsay is set forth in the TYHA. The TYHA provides, in relevant part, as follows:

a) General rule.-- An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in 18 Pa.C.S. Chs. 25 (relating to criminal homicide), 27 (relating to assault), 29 (relating to kidnapping), 31 (relating to sexual offenses), 35 (relating to burglary and other criminal intrusion) and 37 (relating to robbery), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

(1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) the child either:

(i) testifies at the proceeding; or

(ii) is unavailable as a witness.

42 Pa.C.S.A. §5985.1.

8

Under the TYHA, an out-of-court statement of a child sexual assault victim or witness who is twelve years old or younger, is admissible into evidence in a criminal or civil proceeding if

> two requirements are satisfied. First, the trial court must find that the evidence is relevant and that the time, content, and circumstances of the statement provide sufficient indicia of reliability. Second, the child must either (1) testify at the proceeding, or (2) be deemed unavailable as a witness. 42 Pa.C.S.A. § 5985.1(a)(2)(i), (ii). In order for the child to be deemed unavailable to testify as a witness, "the court must determine, based on evidence presented to it, that testimony by the child as a witness will result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate." *Id.* § 5985.1(a.1). In making this determination, the court may (1) observe and question the child, either inside or outside of the courtroom; and (2) hear testimony of the child's parent or custodian or any other person who has dealt with the child in a medical or therapeutic setting. *Id.* § 5985.1(a.1)(1), (2). The TYHA does not require that a trial court's determination of unavailability be supported by expert testimony.

*Commonwealth v. Walter*, 93 A.3d 442 (Pa. 2014).

As the quoted passages demonstrate, to be admissible, a child's out-of-court statement must be both relevant and reliable. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact in issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact. *Commonwealth v. Reid*, 811 A.2d 530, 544 (Pa. 2002); *Commonwealth v. Serge*, 837 A.2d 1255, 1260 (Pa. Super. 2003); Pa.R.E. 401. Reliability requires the court to assess whether the statement contains "particularized guarantees of trustworthiness surrounding the circumstances under which the statements were uttered to the person who is testifying." *Commonwealth v. Delbridge*, 855 A.2d 27, 45 (Pa. 2003). The assessment should consider, among other things, the spontaneity of the statements,

9

consistency in repetition, the mental state of the child, use of unexpected terms in a child of that age and the lack of a motive to fabricate a story. *Walter*, 93 A.3d at 451; *Delbridge, supra. See Idaho v. Wright*, 497 U.S. 805 (1990).

A determination that a child's out-of-court statement is relevant and reliable does not automatically make the statement admissible. The protections of the Confrontation Clause under *Crawford v. Washington*, 541 U.S. 36 (2004) and its progeny must also be considered. *See Michigan v. Bryant*, 562 U.S. 344 (2011); *Davis v. Washington*, 547 U.S. 813 (2006).

In *Crawford*, the High Court held that the Confrontation Clause will not permit the entry of out-of-court testimonial statements by a witness, no matter how reliable, unless (1) the witness is unavailable, and (2) the defendant had a prior opportunity to cross-examine the witness:

> Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does [*Ohio v.*] *Roberts*, 448 U.S. 56 (1980), and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. *Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.*

*Crawford*, 541 U.S at 68 (emphasis in original) *See Commonwealth v. Allhouse*, 36 A.3d 163, 172 (Pa. 2012). However, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford*, 541 U.S. at 59 (citation omitted). *See In re N.C.*, 105 A.3d 1199 (Pa. 2014); *Allhouse, supra; Commonwealth v. Kemmerer*, 33 A.3d 39 (Pa. Super. 2011); *Commonwealth v. Charlton*, 902 A.2d 554 (Pa. Super. 2006), *appeal*

10

*denied,* 911 A.2d 933 (2006). This is especially true in cases where, as here, the defendant has the opportunity to cross-examine the declarant and the witnesses through whom the Tender Years hearsay is admitted at both a pre-trial hearing and during trial. *Kemmerer, supra; Charlton, supra.*

Thus, when the Commonwealth seeks to introduce Tender Years hearsay statements, the threshold Confrontation Clause query under *Crawford* "is whether the statements are testimonial, for if the statements are nontestimonial, 'the confrontation clause places no restriction on their introduction except for the "traditional limitations" upon hearsay evidence'." *Allhouse,* 36 A.3d at 173 (quoting *Davis,* 547 U.S. at 821). In analyzing whether statements are testimonial and, therefore, subject to the protections of the Confrontation Clause under *Crawford,* the court must look at the objective intent of the declarant and the objective intent of the questioner as well as the environment in which the statement was given. *Id.* at 176. In determining the intent of a child declarant it is appropriate to take into consideration the child's age. *Id.* at 180-81. In more expanded terms:

> a court must determine whether the primary purpose of the interrogation was to establish or prove past events relevant to a later criminal prosecution. In making the determination as to the primary purpose of an interrogation, a court first should determine whether the interrogation occurred during the existence of an ongoing emergency, or what was perceived to be an ongoing emergency. Although the existence—actual or perceived—of an ongoing emergency is one of the most important factors, this factor is not dispositive because there may be other circumstances, outside of an ongoing emergency, where a statement is obtained for a purpose other than for later use in criminal proceedings. In determining the primary purpose of an interrogation, a court must also objectively evaluate the circumstances surrounding the interrogation, including the

11

> formality and location, and the statements and actions of both the interrogator and the declarant.

*Allhouse*, 36 A.3d at 175-76.

In sum, under *Crawford* and its progeny, if out-of-court statements are non-testimonial, then they are subject only to the traditional rules of hearsay and the Confrontation Clause does not apply. *Davis*, 547 U.S. at 821. *See Allhouse, supra*. If the statements are testimonial, they are inadmissible unless: 1) the declarant/witness is unavailable and the defendant had a prior opportunity to cross-examine the witness; or 2) the declarant/witness appears for cross-examination at trial. *Crawford, supra; In re N.C., supra; Allhouse, supra; Kemmerer, supra; Charlton, supra*.

In this case, it is undisputed and clear from the record that M.K. is under the age of twelve, that Defendant was charged with and later convicted of Chapter 31 sex offenses, and that M.K. testified and was cross-examined during a pre-trial hearing and at trial. It is also clear from the record that the Commonwealth provided ample pre-trial notice of its intent to introduce statements made by M.K. to her mother and to her therapist.

The statements made by M.K. to her mother and her therapist were addressed at a hearing that included, among other things, an *in camera* examination of M.K. and public testimony from M.K.'s mother and the therapist. Counsel for Defendant cross-examined all three witnesses. (N.T., 3/28/2014, pp. 10-27, 51-76).

M.K. first spoke about the abuse perpetrated by Defendant while her mother was giving her a bath. During the bath, M.K. spontaneously told her mother that Defendant had put a chocolate twizzler stick in her mouth and moved it in and out of her mouth. (N.T., 3/28/2014, pp. 66-67). The following evening M.K.'s mother asked M.K. to repeat

12

the story to her father and M.K. stated that Defendant put both his thumb and a chocolate twizzler stick in her mouth. (*Id.* at 67). A few days later, while getting ready for bed, M.K. told her mother that Defendant took her into his bedroom, closed the door, put a blindfold on her, and put his hairy thumb and chocolate twizzler sticks in her mouth. (*Id.*). Subsequently, after overhearing her mother talk about these incidents on the phone, M.K. told her mother that Defendant shot water into her mouth with a water gun and made her swallow before giving her twizzler sticks. (*Id.* at 68). The statements M.K. made to her mother were spontaneous and consisted of age-appropriate, child-like terms. The statement she made to her father was at the request of her mother, not the police or any governmental person or entity, and was in response to appropriate parental and familial action. Most if not all of the statements were made before any police involvement. M.K. was and continues to be consistent in repeating what Defendant did to her. Additionally, no motive to fabricate was advanced.

During counseling with Ms. Burkhardt, M.K. said that Defendant put his thumb in her mouth and described its taste. (N.T., 3/28/2014, p. 53). In subsequent sessions M.K. told Ms. Burkhardt that Defendant shot water in her mouth, and that he put a blindfold on her. (*Id.* at 57-58). After being educated on male and female anatomy, M.K. told Burkhardt that Defendant placed his penis in her mouth. (*Id.* at 55). These statements were made during the course of counseling sessions which M.K. underwent for therapeutic purposes. In addition, the statements were consistent with what M.K. told her mother..

At trial M.K. was found competent and testified via closed circuit television. Counsel for Defendant cross-examined her. (N.T., 10/22/2014, pp. 7-16, 52-75). M.K.'s

13

mother and Ms. Burkhardt also testified and were cross-examined by Defendant's attorney. (*Id.* at 77-124). The Tender Years hearsay that was elicited during trial consisted of the statements made by M.K. about which the Commonwealth had given Defendant notice and that were the subject of the pre-trial hearing.

In short, at the time she made the challenged statements, M.K. was under 12 years of age. The statements were unquestionably relevant to the crimes charged. The facts amply demonstrate that the time, content, and circumstances of the statements provided sufficient indicia of reliability. In this regard, the statements were spontaneously made to a parent who acted appropriately and to a treating therapist who spoke with M.K. for therapeutic reasons rather than investigatory purposes. Further, M.K. used age-appropriate language and was consistent in repeating the statements. Additionally, no motive to fabricate was advanced. Finally, M.K. testified during the trial. Under these circumstances it is clear that all requirements of the THYA were satisfied.

For many of the same reasons, it is equally clear that the challenged statements were non-testimonial, and therefore, introduction of the Tender Years' hearsay did not violate Defendant's confrontation rights. In this regard, M.K.'s initial statements to her mother were spontaneous. The statement she made to her father was made at the request of her mother; however, that statement was elicited for proper familial reasons and not for investigative or prosecutorial purposes. In addition, the statements were made during normal parent-child interactions in the family's home and before police were involved. Further, at the time she made the statements M.K. was five years-old. It is doubtful that she had any prosecutorial intent. Similarly, her mother acted as a concerned parent and not an investigator or an agent of law enforcement. Likewise, the

14

statements to Ms. Burkhardt were made during the course of counseling, in a therapeutic setting, the purpose of which was to treat M.K., not investigate or gather evidence for the prosecution of Defendant. Along similar lines, neither M.K.'s mother nor Ms. Burkhardt interacted with M.K. with the intent or primary purpose of establishing or proving past events for this criminal prosecution. Under these circumstances and the law cited above, the statements were undoubtedly non-testimonial. As a result, and because the requirements of the TYHA were satisfied, "'the confrontation clause place[d] no restriction on their introduction'." *Allhouse*, 36 A.3d at 173 (quoting *Davis*, 547 U.S. at 821).

In the alternative, even if M.K.'s statements are deemed to be testimonial, Defendant's confrontation rights were not violated because M.K. testified at trial and was cross-examined by counsel for Defendant. As the High Court stated in *Crawford*, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford*, 541 U.S. at 59 (citation omitted). In fact, in this case, M.K., her mother, and her therapist were all cross-examined by Defendant's attorney at *both* the pre-trial Tender Years hearing *and* at trial. Under current law, this completely obliterates Defendant's claim that his confrontation rights were violated. *Crawford, supra; In re N.C., supra; Allhouse, supra; Kemmerer, supra; Charlton, supra.*

Despite the facts summarized above, Defendant apparently contends that M.K.'s statements were constitutionally and statutorily inadmissible because M.K.'s testimony was not qualitatively sufficient to constitute "testimony" within the meaning of either TYHA or *Crawford*. Although not completely clear, it appears that Defendant's

15

contention may be based on the proposition that *Crawford* and its progeny require both the presence of a witness and "an opportunity for effective cross examination." *In re N.C.*, 105 A.3d at 1216. No matter how Defendant fleshes this contention out on appeal, his argument does not hold water because the record amply demonstrates that M.K. provided constitutionally and statutorily sufficient testimony.

In *In re N.C.*, a case not cited by Defendant in the proceedings before this Court, a four year-old, who had not previously been subject to cross-examination, appeared as a witness in a juvenile adjudication hearing. The child was unable to testify on direct examination. Specifically, despite two recesses and as many changes in caregivers to comfort her while she was on the witness stand, the child-witness never verbalized a response to questions concerning the charges the juvenile faced, made only some head movements in response to questions, and eventually became totally unresponsive and recoiled into a fetal position. Simply, during her time on the stand, the child-witness provided virtually no verbal responses on direct examination, which effectively left defense counsel with no opportunity to cross-examine her on the charges brought against the juvenile. As a result, in a narrow holding issued in light of the "specific facts" and "unique circumstances" of the case, our Supreme Court found that the child's Tender Years' hearsay was inadmissible, even though the requirements of the TYHA had or appeared to have been met, because the child could not be cross-examined, and therefore, was not "available" as a witness for Confrontation Clause purposes. *In re N.C.*, 105 A.3d at 1200.

The holding in *In re N.C.* and the principles on which the decision was based do not require that a witness, child or adult, be able to answer every question, remember

every detail, cooperate with the cross-examiner, or answer in the manner and direction in which the cross-examiner desires to lead the witness. Instead, the Confrontation Clause requires only that the accused have a meaningful opportunity to cross-examine. In this regard, the decision specifically recognizes that the mere fact that a child (or an adult) witness refuses to fully cooperate with the examiner, is evasive, or lacks memory of certain events does *not* render the witness constitutionally unavailable for cross-examination. *In Re N.C., 105 A.3d at 1217.*

Here, even a cursory review of the record reveals that M.K.'s testimony was both qualitatively and quantitatively different and vastly more substantive than the testimony of the child-witness in *In re N.C.* The same quick review demonstrates that M.K. provided "testimony" within the meaning of the TYHA, that she was "available" for constitutionally meaningful and effective cross-examination, and that she was, in fact, cross examined. Specifically, M.K. answered all questions put to her by the Commonwealth and also answered all of the questions asked by Defendant's attorney. While she answered some questions by saying that she did not remember, and not surprisingly answered other questions with child-like responses, overall her answers were substantive. To the extent she did not remember specifics or responded with a child's answer, counsel for Defendant was free to mention the manner in which M.K. responded when arguing credibility and weight of the evidence to the jury. Additionally, M.K. did not refuse to answer questions, become unresponsive, or cause either direct or cross examination to cease prematurely. (N.T.,10/22/2014, pp. 55-74). In this regard, Defense counsel ceased questioning M.K. when he had no more questions. Finally, and significantly, counsel for Defendant did not lodge an objection, constitutional or

17

otherwise, to M.K.'s testimony on direct or cross examination. (*Id.* at 74). Under these circumstances, it is clear that M.K. rendered testimony that satisfied both statutory and Confrontation Clause requirements. Defendant's argument to the contrary is bootless.

In short, the requirements of the TYHA were met and introduction of M.K.'s Tender Years hearsay statements did not violate Defendant's constitutional rights. Therefore, we did not err by allowing introduction of M.K.'s statements and Defendant's assignments of error arguing otherwise lack merit.[2]

### 2.  Constitutionality of Closed Circuit Testimony by M.K.

In a related constitutional argument, Defendant contends that our decision permitting M.K. to testify via closed circuit television violated his confrontation rights under both the United States Constitution and the Pennsylvania Constitution. This contention is without merit.

Under the United States Constitution a face-to-face confrontation at trial is not absolutely required and a different form of confrontation may be substituted where avoiding a face-to-face confrontation serves an important public policy and where the reliability of the testimony is otherwise assured. *Maryland v. Craig,* 497 U.S. 836, 850 (1990). Protecting the physical and psychological well-being of a child is a sufficiently important state interest. *Id.* at 853. If the court determines that testifying in the physical presence of the defendant will cause trauma to a child witness, the use of closed-circuit television to hear testimony does not violate the Confrontation Clause. *Id.* at 855-57.

---

[2] Defendant's confrontation rights claims are apparently based on both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution. In the proceedings before this Court, Defendant did not assert or attempt to argue that Article 9, Section 1 affords greater protection than the Sixth Amendment. Further, our Supreme Court has indicated that the Confrontation Clause analysis is the same under both the United States Constitution and the Pennsylvania Constitution. *In re N.C.,* 105 A. 3d at 1210 n.15. See *Commonwealth v. Williams,* 84 A.3d 680, 682 n. 2 (Pa. 2014). Thus, we believe that our analysis adequately addresses Defendant's claims under both constitutions.

18

Historically, the Pennsylvania Constitution granted the accused the right to "meet witnesses face to face." This precluded the use in Pennsylvania of closed circuit television and other forms of testimony where the witness was not in the presence of the defendant. In 2003, the Constitution was amended to provide, in relevant part, that "[i]n all criminal prosecutions the accused hath a right to be confronted with the witnesses against him...." to make it identical to the Confrontation Clause of the Sixth Amendment to the United States Constitution. *Bergdoll v. Commonwealth,* 858 A.2d 185, 190 (Pa. Cmwlth. 2004) (*en banc*), *affirmed,* 874 A.2d 1148 (Pa. 2005). *See also In re N.C., supra; Commonwealth v.* Williams, 84 A.3d 680 (Pa. 2014); *Commonwealth v. Charlton,* 902 A.2d 554, 558 (Pa. Super. 2006). The purpose of the amendment was to allow Pennsylvania to adopt rules to permit children to testify in a criminal proceeding outside of the presence of the accused. *Bergdoll,* 858 A.2d at 191.

Accordingly, under both the United States Constitution and the Pennsylvania Constitution a young child may now testify via a contemporaneous alternative method if the court determines that established criteria are met. The procedure for this determination is provided by 42 Pa.C.S.A. § 5985, a companion statute to the TYHA which has requirements similar to the TYHA. Section 5985 provides, in pertinent part, that:

> (a.1) Determination.--Before the court orders the child victim or the child material witness to testify by a contemporaneous alternative method, the court must determine, based on evidence presented to it, that testifying either in an open forum in the presence and full view of the finder of fact or in the defendant's presence will result in the child victim or child material witness suffering serious emotional distress that would substantially impair the child victim's or child material witness's ability to reasonably communicate. In making this determination, the court may do all of the following:

19

(1) Observe and question the child victim or child material witness, either inside or outside the courtroom.

(2) Hear testimony of a parent or custodian or any other person, such as a person who has dealt with the child victim or child material witness in a medical or therapeutic setting.

Section 5985 has been routinely used since its adoption following the 2003 amendment to Article I, Section 9 of the Pennsylvania Constitution.

In this case, at the Tender Years hearing we observed M.K. and her responses to questions regarding the Defendant. She stated that she did not want to see Defendant or be next to him and did not want to talk about the "bad thing" he had done to her if he was in the same room. She also stated that seeing him would bother her. (N.T., 3/28/2014, pp. 23-24). M.K.'s demeanor and body language conveyed even more clearly that being near Defendant and testifying in front of him in court would cause her distress and impact her ability to communicate. At the same hearing, M.K.'s mother credibly testified that M.K. does not like Defendant and says he is a "bad man." She also expressed her belief that M.K. would not be able to talk about what Defendant did to her if she was in the same room with him (*Id.* at 68). Similarly, Ms. Burkhardt credibly testified that M.K. would suffer emotional trauma if she were forced to testify in front of Defendant about what Defendant had done to her. Ms. Burkhardt further testified that she believed such in-person testimony would affect M.K.'s ability to communicate and talk about incidents involving the Defendant. (*Id.* at p. 54). Based on the evidence presented and our observation of M.K., we determined that M.K. would suffer serious emotional distress that would impair her ability to communicate if she were forced to testify in open court and granted the Commonwealth's motion to allow her to testify via closed circuit television.

20

Because the record amply supports our determination that M.K. would suffer severe emotional trauma if she were forced to testify in open court, the requirements of Section 5985, which serves an important state interest and is stringent enough to Constitutionally permit non face-to-face testimony, were met. Accordingly, allowing M.K. to testify via closed circuit television did not violate the Confrontation Clause of the United States Constitution or the Pennsylvania Constitution.[3] We believe this is especially true in this case since, as discussed, counsel for Defendant had the opportunity to question M.K. during both the pre-trial hearing and at trial, and because the jury and Defendant were able to contemporaneously observe her on the closed circuit television screen.

### 3. Joinder of Cases

Defendant's fifth assignment of error is that we erred by joining the two cases for trial. This contention is non-specific and is without merit.

The joinder and severance of cases for trial is governed by Rules 582 and 583 of the Pennsylvania Rules of Criminal Procedure. In order to join separate indictments for trial, notice must be in writing, filed with the clerk of courts, and a copy served on the defendant at or before the arraignment. Pa.R.Crim.P. 582(b). The court may order separate trials for offenses if it appears that the defendant would be prejudiced by offenses being tried together. Pa.R.Crim.P. 583. The decision to separate or consolidate offenses for trial is at the sole discretion of the trial court. *Commonwealth v. Keaton,* 729 A.2d 529, 537 (Pa. 1999).

On August 13, 2013, the Commonwealth properly noticed the joinder of these separate cases for trial. Defendant did not object to joinder or file a motion to sever.

---

[3] See footnote 2.

21

Instead, he summarily raised and argued improper joinder for the first time in his post-sentence motions. As a result, we believe he has waived this issue. In any event, the issue is meritless because Defendant has not to date alleged or argued prejudice.

## 4. Violation of Sequestration Order

Defendant's final assertion is that we erred by allowing the Commonwealth to call a person to testify as a rebuttal witness who had not been sequestered. This contention is without merit.

The decision of whether to sequester a witness is within the province of the trial judge and, absent a clear abuse of discretion, will not be reversed. *Commonwealth v. Pursell,* 724 A.2d 293, 310 (Pa. 1999) (citation omitted). In order to grant a new trial, a defendant must show that a violation of a sequestration order by the Commonwealth was a deliberate attempt to mislead the jury. *Id.* Selection of a remedy for the violation of a sequestration order is within the discretion of the trial court. *Commonwealth v. Robertson,* 874 A.2d 1200, 1209 (Pa. Super. 2005) (citing *Commonwealth v. Smith,* 346 A.2d 757 (Pa. 1975)). In making its determination, the trial court must consider the "seriousness of the violation, its impact on the testimony of the witness, the probable impact on the outcome of the trial, whether the witness intentionally disobeyed the order, and whether the party calling the witness procured the disobedience." *Commonwealth v. Schwartz,* 615 A.2d 350, 357 (Pa. Super. 1992) (citation omitted).

Evidentiary rulings are reviewed for abuse of discretion. *Commonwealth v. Hairston,* 84 A.3d 657, 665 (Pa. 2014). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but

22

requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.* (Citation omitted).

In the instant case, the Commonwealth called Rebecca Guerrini as a rebuttal witness on the second day of trial. (N.T., 10/23/2014, p. 144). Counsel for Defendant objected on the basis that Guerrini had been in the courtroom and not been sequestered. In response, the assistant district attorney stated that Guerrini, who worked at M.K.'s daycare, had been in the courtroom for the first day of trial and part of the second because he did not initially intend to call her. However, when defense witnesses who worked at M.K.'s daycare testified, the assistant district attorney asked her to step outside because he might want to call her on rebuttal. After the defense rested Guerrini, was called. (N.T., 10/23/2014, p. 145). We accepted and found credible the representation of the Commonwealth, overruled the objection, and permitted Guerrini to testify. (*Id.* at 146). Defense counsel did not request a curative instruction and did not bring up in his cross-examination the fact that Guerrini had remained in the courtroom in violation of the sequestration order. (Id. at 149-151). Defendant has not presented any evidence to indicate that the violation of the sequestration order was a deliberate attempt by the Commonwealth to mislead the jury, and we found at the time that it was not. Guerrini was not certain to be called as a witness by the Commonwealth, and her testimony was limited to a brief rebuttal involving R.D's and M.K's actions and demeanor at school, testimony that had a limited impact on the trial. Additionally, there was and is nothing to indicate that Guerrini intentionally disobeyed the order, that the Commonwealth purposely procured her disobedience, or that she altered her testimony based on what she heard in the courtroom. Finally, Defendant has not alleged and we

23

cannot discern any prejudice. Under these circumstances, we do not believe that we erred or abused our discretion in allowing Guerrini to testify.

In the alternative, erroneous ruling by a trial court on an evidentiary issue does not require relief if the error was harmless. *Commonwealth v. Mitchell*, 902 A.2d 430, 452 (Pa. 2006). The accused is entitled to a fair trial, not a perfect one. *Commonwealth v. Noel*, 104 A.3d 1156, 1172 (Pa. 2014). An error will be deemed harmless where an appellate court concludes beyond a reasonable doubt that the error did not contribute to the verdict. *Id.* An error will be considered harmless if one of the following factors is met:

> (1) the error did not prejudice the defendant or the prejudice was de minimis;
> (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or
> (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Molina*, 104 A.3d 430, 454 (Pa. 2014).

At bar, Guerrini was a teacher at the school both R.D. and M.K. attended. She testified that in one instance she saw R.D. with her hand in her shorts touching herself and also that R.D. started to wet herself in the Spring of 2013. (N.T., 10/23/2014, p. 148). She further testified that M.K. started acting out in class and during a classroom session involving "good touch/bad touch" M.K. raised her hand and said that Defendant put his thumb in her mouth. (N.T., 10/23/2014, pp. 148-149).

Throughout the trial several witnesses testified about potentially illicit physical contact that the Defendant had with R.D. These witnesses included R.D., the Defendant, Melissa DePaoli (recounting a story her husband shared with her), Bobbe

24

Frankel (recounting a story R.D. told her), and Roberta Franzola (a child counselor who worked with R.D.). Guerrini alone testified regarding R.D. touching herself or wetting herself at school. This testimony did not specify any potential source for R.D.'s problems or actions in school. Assuming arguendo that Guerrini's testimony regarding R.D. was admitted in error, the error is harmless due to the fact that 1) the Defendant was not prejudiced by her testimony and 2) the properly admitted evidence of guilt was overwhelming and any prejudicial effect of testimony regarding a few instances of R.D.'s conduct in school was so insignificant that it could not have contributed to the verdict.

Similarly, throughout the trial several witnesses testified regarding at least one encounter Defendant had with M.K. In this regard, M.K. told her mother and her counselor that Defendant placed his hairy thumb in her mouth, and both of these individuals testified to this at trial. M.K also testified at trial that Defendant put his hairy thumb in her mouth. Assuming arguendo that Guerrini's testimony regarding M.K.'s behavior at school and M.K.'s story during a classroom series was admitted in error, the error is harmless. M.K.'s behavior at school was not attributed to a specific event. Further, the story Guerrini heard M.K. repeat in the classroom was merely cumulative of other untainted evidence that was substantially similar. M.K. and two other witnesses described the same story.

We allowed Guerrini to testify despite the fact that she remained in the courtroom, because we accepted and found credible the Commonwealth's assertion that they did not intend to call her until the Defendant brought in testimony she was needed to rebut. The remedy for a violation of a sequestration order is within our discretion, so we did not err by allowing Guerrini to testify. However, even if we erred

25

by allowing her testimony the error did not contribute to the verdict in the case and is harmless.

For these reasons, we believe the judgment of sentence should be affirmed.

Date: September _____, 2015

JONATHAN MARK,                    J.

Cc:  Superior Court of Pennsylvania
     Jonathan Mark, J.
     District Attorney (MTR)
     Brett Riegel, Esq.

2015 SEP 4 PM 1 35
CLERK OF COURTS
MONROE COUNTY, PA

26

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

RECORD FILED IN
SUPERIOR COURT

OCT 18 2016

PHILADELPHIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | |
| | : | NO. 1772 CR 2013 |
| | : | NO. 1773 CR 2013 |
| v. | : | |
| | : | APPEAL DOCKET NO. |
| PAUL DEPAOLI, | : | 1720 EDA 2015 |
| | : | 1721 EDA 2015 |
| Defendant | : | |
| | : | |

## SUPPLEMENTAL OPINION PURSUANT TO Pa.R.A.P. 1925(a)

By judgment order dated August 31, 2016, the Superior Court remanded these consolidated appeals for issuance of an amended opinion addressing the four assignments of error listed on the second page of Defendant's Rule 1925(b) statement that were not addressed in the appeal opinion filed on September 4, 2015. In response, we issue this supplemental opinion.

### Additional Background

The factual and procedural history recited in the initial appeal opinion is supplemented as follows:

1.    The SVP and Sentencing Hearings

After the jury returned its verdicts of guilty, we issued an order scheduling a sentencing hearing. In that order, we directed our Probation Department to conduct a Pre-Sentence Investigation (PSI) and issue a report of its findings, and ordered the

1

Pennsylvania Sexual Offenders Assessment Board (SOAB) to conduct a Sexually Violent Predator (SVP) assessment and file a report containing its conclusions.

Prior to sentencing, the PSI report was timely prepared. It was made available to and reviewed by Defendant's counsel and the Commonwealth's attorney.

The SOAB report was also timely issued. The report identified Defendant as a SVP. Accordingly, we ordered that an SVP hearing be held immediately prior to the sentencing hearing.

On February 19, 2015, the SVP hearing was convened as scheduled. During the SVP hearing, the Commonwealth presented the SOAB report together with the testimony of Mary E. Muscari, PhD, the evaluator who authored the report.[1] (N.T., 2/19/2015 at 8-35; Exhibit 2 (SOAB Report)). Based on her evaluation of all available information, Dr. Muscari diagnosed Defendant as having Pedophilic Disorder. (*Id.* at 13-20; Exhibit 2, pp. 1-8). She also found that Defendant exhibited predatory behavior by abusing positions of trust and authority – his position as the father of one child victim and his status as trusted adult and babysitter of the other child victim – in order to manipulate and sexually assault them. (*Id.* at 19; Exhibit 2, p. 9). Based on these findings, Dr. Muscari concluded that Defendant met the criterion to be classified as an SVP. (*Id.* at 20; Exhibit 2, p. 10).

---

[1] Dr. Muscari authored two reports: an initial report and a revised report. During her testimony, she explained why. When Dr. Muscari first received this case, she was given a record of conviction regarding only one of the two child victims. As a result, in performing the statutory SVP assessment she was not permitted to consider the second child as a victim or even to factor-in information about the second child. Based on consideration of only one of the two victims, Dr. Muscari determined that Defendant did not meet the criteria to be classified as a SVP, a finding reflected in the initial report. However, Dr. Muscari was later given the record of conviction regarding the second child. Accordingly, she re-assessed Defendant. Factoring-in the existence of a second child victim and considering all relevant information, including information about both children, Dr. Muscari concluded that Defendant did meet the criteria to be classified as a SVP. She revised her report accordingly. Dr. Muscari indicated that it was not unusual for records of conviction regarding multiple victims to be provided to assessors at different times. (N.T. 02/19/2015, pp. 11-12, 26-31, and 33-35).

2

Defendant did not present testimony or evidence to contradict Dr. Muscari's findings. (*Id.* at 35-36).

After hearing arguments from counsel for both parties, and considering both the law and the evidence presented during the hearing, we found that the Commonwealth had proven by clear and convincing evidence that Defendant was a SVP. We summarized our reasons on the record. In broad overview, we found Dr. Muscari to be credible, concluded that she properly considered statutory SVP factors, and determined that her diagnoses and conclusions were supported by both the facts and the law. (*Id.* at 38-39).

Immediately after the SVP hearing concluded, the sentencing hearing was convened. Initially, we addressed the Commonwealth's notification and request for imposition of a mandatory minimum sentence pursuant to 42 Pa. C.S.A. Section 9718(a). After hearing arguments, reviewing cases cited by the parties, and explaining the Court's independent research and findings, we held that, under the precedent which existed at the time, the mandatory minimum sentence could not be applied. (*Id.* at 3-8, 40-50, 64-65).

Substantively, neither party had any objections or corrections to the PSI report. (*Id.* at 63). Before sentence was imposed, Defendant and his attorney were given the opportunity to address the Court and to submit evidence. Defendant's attorney began by asserting that the main issue would be whether to run sentences concurrent or consecutive to each other, both within each case and from case-to-case. (*Id.* at 51). He asked the Court to sentence Defendant at the low end of the standard range in both cases and to run the sentences concurrent. Factually, Counsel relied upon the information regarding Defendant's life that was brought out during the trial, the PSI report, and letters that had

3

been submitted on Defendant's behalf. (*Id.* at 51-54). Defendant chose not to speak on his own behalf and no evidence was presented. (*Id.* at 53-54).

The Commonwealth presented the mother of one of the child victims who, through both a written statement and remarks made during the hearing, highlighted the impact Defendant's crimes have had on her daughter and asked for a stiff sentence. Based on the facts of the case, the impact on the child victims and their families, the severity of the crimes, and its assertion that aggravating factors existed, the Commonwealth asked us to impose a total aggregate sentence of 30 to 60 years. (*Id.* at 54-61).

At the conclusion of the hearing, we sentenced Defendant to an aggregate period of incarceration of 23 years, 3 months to 48 years. In addition, we designated Defendant as a SVP, and ordered him to register under the Sexual Offenders Registration and Notification Act (SORNA), 42 Pa.C.S.A. § 9799.10 *et. seq.*, for life. (*Id.* at 68-76; Sentencing Orders, dated February 19, 2015).

Before imposing sentence, we informed Defendant of the documents and information we considered and explained our reasoning. Specifically, we advised Defendant that the sentence was based on the facts developed during trial and pre-trial hearings, the jury verdicts, the nature and severity of the crimes, the comprehensive PSI report, the SOAB report, the statements made by his attorney, the assistant district attorney, and the child victim's mother, and the letters that had been submitted to the Court. We then stated our reasons on the record. (*Id.* at 61-76; PSI Report).

Subsequently, Defendant filed timely post-sentence motions. He alleged that we committed ten errors and asserted both weight and sufficiency of the evidence claims. On

4

May 29, 2015, we denied the motions. Defendant then filed notices of appeal in both cases.

2. Defendant's Failure to Serve His Rule 1925(b) Statements

On June 16, 2015, we issued orders directing Defendant to file Rule 1925(b) statements. On July 6, 2015, Defendant filed a statement with a dual caption in each case. However, he did not serve copies on the undersigned as required by both Pa. R.A.P. 1925(b) and our June 16, 2015 order. In fact, his certificate of service indicates that the statement was served only on the District Attorney.

As a result, to prepare the initial opinion, we had to track down a copy of the Rule 1925(b) statement from the record. We did so by printing a copy of the statement from the electronic docket in case No. 1772. Since a single statement was filed under a dual caption, we did not separately print a statement from the docket in case No. 1773. The version of the statement electronically recorded in case 1772 contains only the first page which, in turn, lists only seven of the eleven assignments of error raised by Defendant. As a result, we addressed only the seven issues of which we were aware.

The Commonwealth was in the same position. From the exhibit attached to the Commonwealth's appellate brief, a copy of which was served on the Court, it appears that the version of the statement provided to the District Attorney, like the version that appears in the electronic docket in case No. 1772, contained only the first page (and therefore only the first seven assignments of error). As a result, the Commonwealth took the position that the final four assignments of error, which it apparently gleaned from

5

Defendant's appellate brief,[2] had been waived, but nonetheless addressed them in the alternative.

After this case was remanded for issuance of an amended opinion, we checked the dockets again. In two different computer systems, the electronic docket in case No. 1772 contains only the first page of Defendant's Rule 1925(b) statement. The Certified Record is currently with the Superior Court. As a result, we cannot determine whether the original "paper" version of the statement includes the second page.

However, the electronic version of the statement filed in Case No. 1773 does contain the second page and, therefore, includes the final four assignments of error that we have been directed to address. In issuing this opinion, we have addressed the last four assignments of error as listed in the Superior Court's judgment order and the version of the statement apparently filed in Case No. 1773.

When viewed in its entirety, Defendant's Rule 1925(b) statement raises eleven assignments of error. The statement repeats the ten allegations of error and the weight claim included in Defendant's post sentence motions, but does not reassert the challenge to the sufficiency of the evidence.

We addressed the first seven issues raised by Defendant in our initial opinion. We now discuss the assignments of error eight through eleven, which are raised in Paragraphs (h) through (k) on the second page of Defendant's appeal statement.

---

[2] Defendant did not provide us with a copy of his appellate brief.

## Discussion

### 1. The Jury Was Properly Instructed On the Crimes Charged

In his eighth assignment of error, Defendant alleges that we erred by failing "to instruct the jury in regards to the mens reas [*sic*] and actus reus issues relating to the voluntariness of the contact between Defendant and RD in the shower[.]" In his Rule 1925(b) statement, he does not specifically link this assertion to any of the individual crimes of which he was convicted. However, in arguing the exact same claim of error on post-sentence motions, Defendant contended that the Court failed to instruct the jury that any penetration by an actor must be the result of a voluntary act. As a result, Defendant attempted to assert that he may have been convicted of Rape of a Child and Involuntary Deviate Sexual Intercourse (IDSI) of a child even if the jury believed "Defendant's testimony that his daughter put her mouth on his penis in the shower without his foreknowledge...." (Defendant's "Post Sentencing Motions," filed March 2, 2015, pp. 6-7). This allegation, which effectively contends that we should have molded the jury instructions to comport with Defendant's theory of the case, lacks merit.[3]

"A person commits the offense of rape of a child, a felony of the first degree, when the person engages in sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S. § 3121(c). The Pennsylvania Crimes Code describes sexual intercourse, as follows, "In addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required." 18 Pa.C.S.

---

[3] This assignment of error applies *only* to Case No. 1773, in which Defendant was convicted of Rape of a Child and IDSI of a child against his daughter, R.D. The claim of error does *not* apply to the separate case, docketed to No. 1772, in which Defendant was convicted of IDSI of a child against his daughter's friend, M.K..

7

§ 3101. A person commits the separate crime of IDSI of a child, also felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age. 18 Pa.C.S. § 3123(b). Deviate sexual intercourse is defined as "sexual intercourse per os or per anus between human beings and any form of sexual intercourse with an animal. The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures." 18 Pa.C.S. § 3101.

At trial, Defendant requested that a paragraph regarding *mens rea* should be included because "there [was] no dispute, no quibble about the existence of [Defendant's] penis being in his daughter's (RD) mouth. The question is, was it in the context of rape or was it in the context of a child's playful behavior . . ." (N.T. 10/23/2014, p. 156). We denied Defendant's request and gave instructions for the crimes of Rape of a Child and IDSI of a Child that correctly reflected the law and properly charged the jury on the elements of the crimes.

When evaluating the propriety of jury instructions, appellate courts:

> look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper....[I]t is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa. Super. 2014) (quoting *Commonwealth v. Trippett*, 932 A.2d 188, 200 (Pa.Super.2007)). In this regard, while

8

defense attorneys may submit points for charge and requested instructions, the court is not obligated to accept counsel's wording for an instruction as long as the court's instruction "correctly reflects the law." *Commonwealth v. Ohle*, 470 A.2d 61, 70 (Pa. 1963).

In these cases, our jury instructions accurately reflected the law and properly instructed the jury on the elements of these crimes. (N.T., 10/23/2014, pp. 229-30). Defense counsel's requested instruction was nothing more than an attempt to align the jury charge with his theory that Defendant's penis accidently went into the mouth of his daughter while they showered together. This is especially clear given the fact that the claim of accident was asserted as only to one of several incidents where Defendant put his penis into the mouths of the child victims and as to only the charges filed in Case No. 1773 in which his daughter, R.D., was the victim. We were under no obligation to read Defendant's requested charge or to mold our instructions to dovetail with his attorney's closing argument. However, our ruling did not preclude Defendant from asserting his theory of the case. On the contrary, we clarified that both parties could argue what "penetration" is or is not and that there is a difference between someone inserting their penis into someone's mouth and someone inserting their mouth on a penis. (*Id.* at 164-65). In fact, counsel for Defendant did just that. (*Id.* at 166-67).

Simply, we properly instructed the jury on the charges of Rape of a Child and IDSI of a Child. Defendant's eighth assignment of error is bootless.

9

2. Defendant Was Properly Classified as a Sexually Violent Predator.

In his ninth assignment of error, Defendant contends that we erred in finding him to be a SVP. This contention is meritless.

As noted, at the conclusion of the SVP hearing, we summarized our reasons for classifying Defendant as an SVP on the record. (N.T., 2/19/2015, pp. 38-39). We incorporate our on-record statements into this opinion by reference. Having reviewed the record in light of this appeal, we remain convinced that we correctly determined that the Commonwealth proved by clear and convincing evidence that Defendant was an SVP within the meaning of SORNA, including Sections 9799.12 and 9799.24 of the Law. To what we stated on the record, we highlight, amplify, and add the following:

Our Superior Court recently articulated the standard and scope of review to be applied in a challenge to an SVP determination:

> A challenge to a determination of SVP status requires us to view the evidence:
>> [I]n the light most favorable to the Commonwealth. The reviewing court may not weigh the evidence or substitute its judgment for that of the trial court. The clear and convincing standard requires evidence that is so clear, direct, weighty and convincing as to enable [the trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [at] issue.
>
> *Commonwealth v. Plucinski*, 868 A.2d 20, 25 (Pa. Super. 2005) (internal citations and quotation marks omitted). The scope of review is plenary. *Commonwealth v. Brooks*, 7 A.3d 852 (Pa.Super.2010), *appeal denied,* 610 Pa. 614, 21 A.3d 1189 (2011). "[A]n expert's opinion, which is rendered to a reasonable degree of professional certainty, is **itself** evidence." *Commonwealth v. Fuentes*, 991 A.2d 935, 944

10

(Pa. Super. 2010) (*en banc*), *appeal denied*, 608 Pa. 645, 12 A.3d 370 (2010) (emphasis in original).

A challenge to the sufficiency of the evidence to support an SVP designation requires the reviewing court to accept the undiminished record of the case in the light most favorable to the Commonwealth. *Commonwealth v. Meals*, 590 Pa. 110, 119, 912 A.2d 213, 218 (2006). The reviewing court must examine all of the Commonwealth's evidence without consideration of its admissibility. *Commonwealth v. Baker*, 24 A.3d 1006, 1035 (Pa. Super. 2011). A successful sufficiency challenge can lead to an outright grant of relief such as a reversal of the SVP designation, whereas a challenge to the admissibility of the expert's opinion and testimony is an evidentiary question which, if successful, can lead to a new SVP hearing. *Commonwealth v. Sanford*, 580 Pa. 604, 608–09, 863 A.2d 428, 431 (2004) (distinguishing concepts of sufficiency of evidence versus admissibility of evidence, but refusing to render any opinion on whether SVP expert's "reliance on the affidavit of probable cause and the charging documents somehow rendered her testimony inadmissible as this issue is not before this court").

> As a general rule, [the] standard of review of a trial court's evidentiary ruling . . . is limited to determining whether the trial court abused its discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Dengler*, 586 Pa. 54, 65, 890 A.2d 372, 379 (2005) (internal citations and quotation marks omitted). Our task in either scenario is one of review, not one of reweighing or assessing the evidence in the first instance. *Meals, supra* at 127, 912 A.2d at 223.

*Commonwealth v. Prendes*, 97 A.3d 337, 355-56 (Pa. Super. 2014).

SORNA requires that the Commonwealth prove by clear and convincing evidence that an individual is a SVP. 42 Pa.C.S.A. § 9799.24(e)(3). To classify a defendant as a SVP, the Commonwealth must first show that the defendant has been convicted of at

11

least one sexually violent offense, as set forth in 42 Pa.C.S.A. Section 9799.14. Secondly, the Commonwealth must show that the defendant has "a mental abnormality or personality disorder that makes [him] likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9799.12. When the Commonwealth meets this burden, the trial court then makes the final determination on the defendant's status as a SVP. *See Commonwealth v. Prendes, supra; Commonwealth v. Askew*, 907 A.2d 624, 629 (Pa. Super. 2006), *appeal denied,* 919 A.2d 954 (Pa. 2007); *Commonwealth v. Kopicz*, 840 A.2d 342 (Pa. Super. 2003).

In these cases, Defendant was convicted of, among other crimes, Rape of a Child, IDSI of two children, and Indecent Assault of two children. All three crimes are listed as sexually violent offenses in Section 9799.14. Thus, the first element the Commonwealth was required to prove was undisputedly satisfied.

The second element the Commonwealth was required to prove is that Defendant has "a mental abnormality or personality disorder that makes [him] likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9799.12. The following elements must be considered:

> An assessment shall include, but not be limited to, an examination of the following:
> (1) Facts of the current offense, including:
>    i.    Whether the offense involved multiple victims.
>    ii.   Whether the individual exceeded the means necessary to achieve the offense.
>    iii.  The nature of the sexual contact with the victim.
>    iv.   Relationship of the individual to the victim.
>    v.    Age of the victim.

12

      vi.    Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

      vii.   The mental capacity of the victim.

(2) Prior offense history, including:

      i.    The individual's prior criminal record.

      ii.   Whether the individual completed any prior sentences.

      iii.  Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

      i.    Age.

      ii.   Use of illegal drugs.

      iii.  Any mental illness, mental disability or mental abnormality.

      iv.  Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of re-offense.

42 Pa.C.S.A. § 9799.24(b).

Here, the Commonwealth relied on the report and testimony of Dr. Muscari, an expert on sexual offenders and the SOAB evaluator, who performed the court-ordered sex-offender assessment and prepared the SOAB report. Dr. Muscari testified that in performing her assessment of Defendant, she considered each of the statutory factors she was required to examine under Section 9799.24(b). She said that, based on her consideration of the statutory factors and the facts of this case, she had formed an opinion, to a reasonable degree of professional certainty, that Defendant meets the criteria for classification as an SVP. She outlined the facts she considered relevant to each factor in her written report and discussed the factors and corresponding facts during her testimony.

In summary, based on a review of all available records, and considering the factors under Section 9799.24, Dr. Muscari diagnosed Defendant as having Pedophilic Disorder and found Defendant's behavior during the commission of the underlying charges to have been predatory in nature. (N.T., 2/19/15, pp. 16-20; Exhibit 2, SOAB Report, pp. 7-10). This opinion was based on, among other facts and factors: the circumstances surrounding the crimes, the fact that there were two child victims, the ages of both girls, Defendant's relationship with each of the children, and Defendant's use of those relationships to manipulate and sexually assault the children.

We found that Dr. Muscari's uncontradicted testimony was credible and that her report, diagnoses, and conclusions were fully supported by both the facts and the law. Viewed in the light of the applicable standards, Dr. Muscari's testimony and report are more than sufficient to establish, by clear and convincing evidence, that Defendant was a SVP. Defendant's protestation to the contrary lacks merit.

3.    Defendant's Sentencing Challenge Fails to Assert a Substantial Question and, in Any Event, Is Devoid of Merit.

In his tenth assignment of error, Defendant claims that we erred by sentencing him, "in excess of the 'mandatory minimum,' though the Court correctly found that such 'mandatories' are constitutionally infirm." This sentencing challenge fails to assert a substantial question. In the alternative, it is devoid of merit.

Sentencing is a matter within the sound discretion of the trial court. *See Commonwealth v. Walls*, 926 A.2d 957 (Pa. 2007). In sentencing each particular defendant, the sentencing court may select one or more options with regard to

14

determining the appropriate sentence to be imposed. *Id.* The options include guilt without further penalty, probation, partial confinement, or total confinement. *Id.*; 42 Pa.C.S. § 9721(a). The court must impose a sentence that is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). *See Walls*, 926 A.2d at 967-68; *Commonwealth v. Dodge*, 957 A.2d 1198, 1200 (Pa. Super. 2008) ("*Dodge II*"), *appeal denied*, 980 A.2d 605 (Pa. 2009).

The sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing are instructive and advisory, but are not binding on the sentencing court. The court is obligated to consider the guidelines, but is under no duty to sentence a particular defendant within the guidelines or to impose the minimum possible confinement consistent with the guidelines. *Walls*, 926 A.2d at 575; *Dodge II*, 957 A.2d at 1201. "Where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010) (citing *Commonwealth v. Cruz-Centeno*, 668 A.2d 536 (Pa. Super. 1995), *appeal denied*, 676 A.2d 1195 (Pa. 1996)).

"When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S.A. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant[.]" *Commonwealth v. Walls*, 846 A.2d 152, 157 (Pa. Super. 2004). Additionally, a court should consider the particular circumstance of the offense and the character of the defendant, and should refer to the defendant's prior criminal record, his age, personal

15

characteristics and his potential for rehabilitation. *Moury*, 992 A.2d at 171 (citing *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002), *appeal denied*, 868 A.2d 1198 (Pa. 2005), *cert. den*, 545 U.S. 1148 (2005)).

The court determines whether the sentence imposed should run consecutively or concurrently with other sentences to which the defendant is subject. In this regard, it is well-settled that the sentencing judge has discretion to impose a sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. See *Commonwealth v. Mastromarino*, 2 A.3d 581 (Pa. Super. 2010) (and cases cited therein) and *Commonwealth v. Marts, 889*, A.2d 608 (Pa. Super. 2005) (same). *See also* 42 Pa. C.S.A. §9721(a).

The sentencing judge must state his or her reasons for the sentence on the record. 42 Pa.C.S.A. § 9721(b). The judge may satisfy this requirement by stating or demonstrating at time of sentencing that the judge has been informed of the reasons by the PSI report. *Commonwealth v. Coss*, 695 A.2d 831, 834 (Pa. Super. 1997); 42 Pa.C.S.A. § 9721(b). When, as here, a PSI report exists, the law presumes that

> the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself....[Sentencing courts] are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true ... in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to

16

> take the position that if a court is in possession of the facts, it
> will fail to apply them to the case at hand.

*Commonwealth v. Devers*, 546 A.2d at 18. See also *Moury*, 992 A.2d at 171; *Commonwealth v. Fowler*, 893 A.2d 758 (Pa. Super. 2006); *Commonwealth v. Tirado*, 870 A.2d 362 (Pa. Super. 2005); *Commonwealth v. Burns*, 765 A.2d 1144, 1150-1151 (Pa. Super. 2000). In this regard, a sentencing judge is not required, when giving the reasons for a particular sentence, to make a specific reference to the factors set forth in the Sentencing Code that were considered in deciding the sentence, but the record as a whole must reflect that the judge in fact considered the sentencing factors. *Commonwealth v. Coulverson*, 34 A.3d 135, 145-146 (Pa. Super. 2011).

Sentences that fall within guideline ranges are subject the "clearly unreasonable" standard of 42 Pa. C.S.A. Section 9781(c)(2), while sentences that fall outside the guidelines are subject to the "unreasonable" standard of Section 9781(c)(3). An "unreasonable" decision from the sentencing court would be one that is " 'irrational' or 'not guided by sound judgment.' " *Walls*, 926 A.2d at 963. See also *Dodge II*, 957 A.2d at 1200; 42 Pa. C.S.A. § 9781(c)(2) and (3).

In sum, our sentencing laws establish a framework for sentencing. Within the established framework, trial courts have broad discretion in determining the range of permissible confinements that best suits the particular defendant and the circumstances surrounding the event. See *Commonwealth v. Moore*, 617 A.2d 8, 12 (Pa. Super. 1992). In order to constitute an abuse of discretion, a sentence must either exceed the statutory limits or be so manifestly excessive as to constitute an abuse of discretion.

*Commonwealth v. Miller*, 965 A.2d 276, 277 (Pa. Super. 2009) (quoting *Commonwealth v. Fish*, 752 A.2d 921, 923 (Pa. Super. 2000)). A sentence should not be disturbed where it is evident that the sentencing court was aware of sentencing considerations and weighed the considerations in a meaningful fashion. Finally, where the sentencing court imposes a standard-range sentence with the benefit of a PSI report, the Superior Court will not consider the sentence excessive. *Commonwealth v. Corley*, 31 A.3d 293, 298 (Pa. Super. 2011) (citing *Commonwealth v. Moury, supra*).

Challenges to the discretionary aspects of sentencing do not entitle a defendant to review as of right. In order to establish that review is warranted, the appellant must demonstrate that there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. A substantial question exists only when the defendant advances a colorable argument that the sentencing judge's actions were either: 1) inconsistent with a specific provision of the Sentencing Code; or 2) contrary to the fundamental norms of the sentencing process. *See Commonwealth v. Mouzon*, 812 A.2d 617, 627-628 (Pa. 2002) (plurality); *Commonwealth v. Crump*, 995 A.2d 1280, 1282 (Pa. Super. 2010), *appeal denied*, 13 A.3d 475 (Pa. 2010); *Moury*, supra; *Commonwealth v. Sierra*, 752 A.2d 910 (Pa. Super. 2000). These issues must be examined and determined on a case-by-case basis. *Commonwealth v. Marts*, 889 A.2d 608, 613 (Pa. Super. 2005).

Before reviewing the discretionary aspects of a sentencing claim, the Superior Court conducts:

> a four-part analysis to determine: (1) whether appellant has
> filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2)
> whether the issue was properly preserved at sentencing or in a

18

> motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).... Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or raised in a motion to modify the sentence imposed at that hearing.

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 909 A.2d 303 (Pa. 2006) (citations and quotation marks omitted).

Application of these rules, standards, and guidelines to the facts of this case demonstrates that Defendant's sentencing challenge is meritless.

Initially, we do not believe that Defendant will be able to demonstrate the requisite substantial question. Defendant's sentencing challenge consists entirely of his general, conclusory assertion that we erred in sentencing him to a period of time "in excess of" a mandatory minimum sentence we ruled could not be applied. He makes no attempt to either explain why the sentence is excessive or identify a sentencing norm or code provision that was not followed by the Court. The challenge is nothing more than a bald "excessiveness" claim of the type that is routinely rejected as failing to assert a substantial question. This is especially true in this case since Defendant was sentenced within the standard range.

In the alternative, if Defendant's excessiveness challenge will be heard, the challenge is substantively without merit. As noted, we stated our reasons for the sentence imposed on the record. Our on-record statements demonstrate that, in fashioning Defendant's sentence, we strove to achieve a sentence that was consistent with the

protection of the public, the gravity of the offense in relation to its impact on the victims and the community, the rehabilitative needs (and realities) of Defendant, and other appropriate sentencing considerations. See 42 Pa.C.S.A. §9721(b). In doing so, we had first-hand knowledge of the evidence and of Defendant's in-court demeanor gleaned from pre-trial proceedings, the trial, the SVP hearing, and sentencing. We also had the benefit of the SOAB report and a comprehensive PSI report which contained substantial information—favorable and unfavorable, mitigating and aggravating—about Defendant. At the sentencing hearing, we indicated an awareness of and an appreciation for the information contained in the reports regarding Defendant's character, background, and predatory conduct, and weighed those factors and the requisite statutory and guideline provisions when deciding and announcing Defendant's sentence. We also gave reasons for imposing sentence. The fact that Defendant believes his sentence is "excessive," or that he wants a lighter sentence, does not establish either an error of law or an abuse of discretion.

Simply, before imposing sentence, we identified the facts, information, documents, and reports, including the PSI report and SOAB report, we considered. We also explained our reasons for imposing the sentence that Defendant now seeks to challenge. (N.T., 2/19/2015, pp.61-67; PSI Report). Our on-record statements, coupled with the PSI report and SOAB report, are more than sufficient to explain the reasons for the sentence we imposed, to demonstrate that we complied with applicable sentencing laws and regulations, to show that in sentencing Defendant we acted well within our discretion, to debunk Defendant's bald sentencing challenge, and to adequately, properly,

20

and fully address any sentencing issue that Defendant is deemed to have preserved for appellate review.

4.    Defendant Waived His Weight Claim. In the Alternative, the Claim is Meritless.

In his eleventh and final assignment of error, Defendant asserts that "the jury's verdict was against the weight of the evidence." This boilerplate is insufficient to raise a valid weight claim. In the alternative, the claim is bootless.

Pennsylvania Rule of Criminal Procedure 607 provides:

> (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
> > (1) orally, on the record, at any time before sentencing;
> >
> > (2) by written motion at any time before sentencing; or
> >
> > (3) in a post-sentence motion.

Pa.R.Crim.P. 607(A). A post-sentence motion challenging the weight of the evidence "will preserve no issue for appellate review unless the motion goes on to *specify in what respect* the evidence was insufficient, or *why* the verdict was against the weight of the evidence." *Commonwealth v. Holmes*, 461 A.2d 1268, 1270 (Pa. Super. 1983) (emphasis in original).

Here, Defendant filed a timely post-sentence motion challenging the weight of the evidence. However, the motion included only the boilerplate assertion that "[t]he jury's verdict was against the weight of the evidence." (Defendant's "Post Sentencing

21

Motions," filed March 2, 2015, ¶H). The motion does not even attempt to specify how the verdict was contrary to the weight of the evidence. The boilerplate is insufficient to preserve the weight claim for appellate review.

Defendant's 1925(b) statement likewise lacks the required specificity to preserve a weight claim. In fact, the statement contains only the same boilerplate that was included in the post sentence motion. (Defendant's Rule 1925(b) statement, filed in case no. 1773 on July 6, 2015, ¶k). A boilerplate appeal statement, like a boilerplate post sentence motion, will not preserve a weight claim. *See Commonwealth v. Seibert*, 799 A.2d 54, 62 (Pa. Super. 2002) (vague weight claim in Rule 1925(b) statement waives claim).

For these reason, we believe that Defendant's weight claim has been waived. In the alternative, the weight claim is substantively without merit.

A challenge to the weight of the evidence,

> concedes that there is sufficient evidence to sustain the verdict. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (internal citations, footnote, and quotation marks omitted). A verdict is not contrary to the evidence

22

because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the fact[-]finder. Rather, a new trial is warranted only when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. . . . [A]n appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.... [O]nly where the facts and inferences disclose a palpable abuse of discretion will the denial of a motion for a new trial based on the weight of the evidence be upset on appeal.

*Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014). Finally, there is, of course,

some tension between the power of trial courts to overturn jury verdicts premised upon weight claims, and the bedrock principle that questions of credibility are exclusively for the fact-finder. Accordingly, the authority for the trial judge to upset a verdict premised upon a weight claim is narrowly circumscribed.

*Armbruster v. Horowitz*, 813 A.2d 698, 702-03 (Pa. 2002) (internal citations and quotation marks omitted).

In this case, the jury heard and saw the testimony of both child victims Defendant was charged with sexually assaulting. The victims testify about incidents during which Defendant stuck his penis into their mouths. Their testimony, standing alone, was enough to support the verdicts and undermine Defendant's weight claim.

However, the child victims' testimony did not stand alone. Several other witnesses called by the Commonwealth testified about statements made by the child victims which were consistent with their trial testimony. In addition, Defendant acknowledged that his penis went into the mouth of one of the victims, R.D., although he characterized that

23

occurrence as accidental or the result of a child being curious. All witnesses were thoroughly cross-examined.

The jury also heard and saw the testimony of all defense witnesses. Defendant testified on his own behalf. In doing so, Defendant claimed his penis accidentally landed in his daughter's mouth while taking a shower. Along similar lines, Defendant's wife testified that Defendant told her that his penis accidently landed in his daughter's mouth. In addition, Defendant's wife claimed Defendant was an honest man even though he had waited years to disclose multiple affairs with other women. Further, Defendant also called three character witnesses. All three testified that Defendant had a reputation for being a truthful person. Like the Commonwealth's witnesses, the defense witnesses, including Defendant, were cross-examined.

The jury observed all witnesses testify. By its verdict, the jury obviously believed the Commonwealth's evidence, including the testimony of the victims and the witnesses who testified about the children's statements, found that the statements made by both victims were reliable,[4] and rejected the evidence and arguments presented by Defendant. Doing so was squarely within the province of the jury.

Under the facts and circumstances of this case, the verdict does not shock the conscience and there is not even a hint that justice has been denied. Accordingly, we did not and do not detect any basis on which to intrude on the jury's findings or alter its verdict. The weight claim, if not deemed waived, simply does not hold water.

---

[4] In ruling that M.K. and R.D.'s statements were admissible under the Tender Years Hearsay Act, we, too, found that the statements were made under reliable circumstances.

24

## Conclusion

In sum, for the reasons articulated in our initial appeal opinion, assignments of error one through seven are baseless. For the reasons stated in this opinion, assignments of error eight through eleven similarly lack merit. Accordingly, we believe the judgments of sentence should be affirmed.

BY THE COURT:

Date: 11 October 2016

Jonathan Mark, _____ Judge

Cc:    Superior Court of Pennsylvania
       Jonathan Mark, J.
       District Attorney (MTR)
       Brett Riegel, Esq.

25